Nina Kani (Bar No. 221652)
  nkani@kanilaw.com
**KANI LAW GROUP**
895 Dove Street, Suite 300
Newport Beach, CA 92660
Tel: (949) 955-4994

Rana S. Ziaee (Bar No. 226238)
  rsz@zlplc.com
**ZIAEE LAW**
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Tel: (949) 544-1260
Fax: (949) 544-1269

Attorneys for Plaintiffs and Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE STANO, BENNY SHU, MARIO GUERRERO, MARY CARMONA (ROUSSE), individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>IPC INTERNATIONAL CORPORATION, WHICH WILL DO BUSINESS IN CALIFORNIA AS ILLINOIS PROTECTION CORPORATION, a California corporation; IPC INTERNATIONAL CORPORATION, an Illinois Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO.: SACV12-00088 DOC (RNBx)<br>(Assigned for all purposes to the Hon. David O. Carter in courtroom 9D)<br><br>**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**<br><br>Date:        November 5, 2012<br>Time:        8:30 a.m.<br>Courtroom:   9D<br>Judge:       David O. Carter. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rule of Evidence 201, this Court may take judicial notice of the following documents.

1. The January 11, 2011, civil minutes in *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.*, Case No. CV 09-9554 GHK (Ex), a true and correct copy of which is attached hereto as **Exhibit A**.

Federal Rule of Evidence 201 permits the Court to take judicial notice of "matters of public record" as long as the facts are not "subject to reasonable dispute." *Wheeler v. City of Oakland*, 2006 U.S. Dist. LEXS 27680 at *5-16 (N.D. Cal. Apr. 28, 2006) (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)). See also *Mullis v. U.S. Bankruptcy Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987). Court records such as the above-listed documents are the type of documents that are properly noticed under Rule 201.

DATED: October 5, 2012          By: _____

**KANI LAW GROUP**
  Nina Kani (Bar No. 221652)
895 Newport Center Drive, Suite 300
Newport Beach, CA 92660

**ZIAEE LAW**
  Rana S. Ziaee (Bar No. 226238)
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660

Attorneys for Plaintiffs and Putative Class

# EXHIBIT "A"

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
|---|---|---|---|
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** (In Chambers) Order re: Plaintiffs' Motion for Class Certification; [36]

This matter is before the Court on Plaintiffs Muhammed Abdullah ("Abdullah"), William Kimbrough, IV ("Kimbrough"), and Christina Aguilar's ("Aguilar," and collectively, "Plaintiffs") Motion for Class Certification ("Motion"). Plaintiffs are former security guard employees of Defendant U.S. Security Associates, Inc. ("Defendant"). In their Second Amended Complaint ("SAC"), Plaintiffs identified eleven sub-classes. The instant Motion seeks the certification of eight sub-classes.[1] We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.      Legal Standard**

A motion for class certification is governed by the requirements of Federal Rule of Civil Procedure 23. In determining whether to certify the class, we must take the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). However, we may look beyond the pleadings and at the substantive claims of the parties to decide whether the Rule 23 criteria have been met. *Id.* Moreover, we are "required to consider the nature and range of proof necessary to establish [the] allegations" in the complaint. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citation omitted).

Federal Rule of Civil Procedure 23(a) imposes four prerequisites for a proper class action:

---

[1] There is considerable ambiguity in Plaintiffs' Motion as to which subclasses they wish to certify. The Notice of Motion and the introduction to the Memorandum of Points and Authorities omit any mention of subclass (i), yet Abdullah's claims are asserted to be, without any analysis, typical of this subclass. Although the introduction to the Memorandum of Points and Authorities lists subclasses (j) and (h) as among those Plaintiffs seek to certify, the Notice of Motion omits them and no class representative is designated for either subclass. To the extent that Plaintiffs actually intended to seek certification of any of these three subclasses, their notice to the Court and Defendant is inadequate, and we deem Plaintiffs to have abandoned these subclasses.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.  CV 09-9554-GHK (Ex)                                  Date  January 11, 2011

Title  *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.*

> One or more members of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying the prerequisites set forth in Rule 23(a), a party seeking certification must satisfy one of three conditions set forth in Rule 23(b). Plaintiffs argue that the proposed class and subclasses satisfy Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Furthermore, "[t]he party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 580 (9th Cir. 2010) (*en banc*) (citation omitted).

## II.   Overall Class

### A.   *Class Definition*[2]

For the reasons contained herein, we certify the following class: "a class of all of Defendant's current and former Security Guard/Officer employees in California from July 1, 2007 to the present, and who qualify as a member of one or more of the certified subclasses."

### B.   *Rule 23(a)(1)*

The numerosity requirement is satisfied here because it is undisputed that Defendant's current and former employees during the class period are approximately 3,600 security guards in California. (Dkt. No. 36, Whitehead Decl., Ex. A, Flury Depo. ["Flury Depo."] 138:22-139:14).

### C.   *Rule 23(a)(4)*

We conclude that the named representative parties will fairly and adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). All Plaintiffs have indicated that they will assist counsel, (Dkt. No. 36,

---

[2] Plaintiffs have defined the putative class as: "a class of all current and former Security Guard/Officer employees of Defendants [sic] who worked at US Security Associates, Inc. in California during the period from July 1, 2007 to the present." We conclude that this is an overbroad definition absent the limitation we impose in our discussion.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
|---|---|---|---|

| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

Abdullah Decl. ["Abdullah Decl."] ¶ 10; *id.*, Kimbrough Decl. ["Kimbrough Decl."] ¶ 12; *id.*, Aguilar Decl. ["Aguilar Decl."] ¶ 11), and counsel for Plaintiffs appear to be experienced wage and hour class action litigators, (*id.*, Yoon Decl. ¶¶ 3-8).

Defendant suggests that Plaintiffs have a potential conflict in representing a class that includes supervisory security guards, who Defendant claims were responsible for overseeing and enforcing Defendant's meal break policies. However, Plaintiffs' theory is based on the existence of a company-wide policy, not the potential wrongdoing, if any, of individual supervisory employees.

Defendant also argues that all Plaintiffs are former employees and therefore are inadequate representatives of the putative class members currently employed by Defendant. Although a class representative's status as a former employee is a factor we must weigh, there is no absolute bar against a former employee representing a class that includes current employees. *See Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 455 (9th Cir. 2009); *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 489 (N.D. Cal. 1978) ("[T]here is ample support for the position that former employees may represent present employees . . . ." (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975))); *In re Wells Fargo Home Mortgate Overtime Pay Litigation*, 527 F. Supp. 2d 1053, 1064 (N.D. Cal. 2007). Notwithstanding Plaintiffs' status as former employees or the nature of their termination, Plaintiffs and the putative class's current employee members are all "equally interested in obtaining compensation for the assertedly unlawful practices set forth" in the Second Amended Complaint, and Plaintiffs are adequate representatives. *Glass*, 331 F. App'x at 455. Moreover, any purported inconsistencies between Plaintiffs' prior testimony do not overcome their showing of adequacy.

D.   **Rule 23(b)(3), Rules 23(a)(2) and (a)(3)**

To the extent there is dispute between the Parties as to commonality, typicality, and predominance, such disputes relate to the claims asserted by particular subclasses. We address those specific issues in our discussion of each subclass.

The class action method is superior to requiring each employee to file an individual claim. Such alternative would result in duplicative discovery and filings. Also, given the relatively small amount each putative class member stands to collect, there would be insufficient incentive for each to bring a claim. This case is also manageable as a class action. Defendant's records for each employee concerning their payment history, hours worked, and worksite assignments can be analyzed readily to determine issues related to the claims and damages, if any.

III.   **Subclasses**

A.   **Rule 23(a)(1)**

Plaintiffs assert, and Defendant does not dispute, that the smallest subclasses are those made up of former employees. Even for these smallest subclasses, there are 800-900 employees whose

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

employment ended during the class period, satisfying the numerosity requirement. (Flury Depo. 139:3-14).

### B. Rule 23(b)(3), Rules 23(a)(2) and (a)(3)

#### 1. Subclass (b) (meal and rest break)[3]

As to the meal break component of the subclass, Plaintiffs allege that Defendant's policy improperly required its employees to take on-duty meal breaks. California Labor Code § 226.7 states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. (b) If an employer fails to [do so,] . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Industrial Welfare Commission Wage Order No. 4 § 11(A) provides that:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . . Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.

Plaintiffs have provided sufficient evidence to establish predominate common issues of fact and law. All putative subclass members were required to sign an "On-Duty Meal Break Consent Agreement." (Dkt. No. 36, Whitehead Decl., Ex. F; Flury Depo. 39:17-19). Furthermore, Defendant has admitted that a large majority[4] of its employees work at "single guard posts" where there is no other employee to relieve them from their duties, requiring the employees to take on-duty meals. (Flury Depo. 128:9-129:19). Defendant argues that various employees' declarations[5] establish that meal breaks were

---

[3] Plaintiffs have defined the putative subclass as: "a Subclass of all of Defendants' [sic] past and present California employees who worked more than 6 hours in any work shift as a Security Guard/Officer from July 1, 2007 through the present[.]" (SAC ¶ 18(b)). This definition is also too broad absent the limitation we impose in our discussion.

[4] In his deposition, Leo Flury, the designated Person Most Knowledgeable for Defendant, stated that "99.9% of [his] business" consisted of single guard posts. (Flury Depo. 128:9-129:19). Through an errata, Flury corrected his testimony to indicate that "a large majority" consisted of single guard posts. (Dkt. No. 36, Whitehead Decl., Ex. B).

[5] Plaintiffs have objected that these declarations were not timely disclosed and should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1). Since our conclusions with respect to the

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

taken during some shifts. However, very few of these declarations unambiguously demonstrate that the employee was entirely relieved of duty; a significant number reveal that employees could be called away from their meal breaks to return to work. (*See, e.g.*, Dkt. No. 42, Hildebran Decl. ¶ 6; *id.* Hyatt Decl. ¶ 6; *id.*, Haynes Decl. ¶ 11). None of these declarations establishes that the declarant was categorically given off-duty meal breaks.[6] Given the uniform policy of requiring the putative subclass members to sign the on-duty meal break agreement and the evidence that, in the vast majority of cases, this policy was implemented to require on-duty meal breaks be taken, Plaintiffs have established common and predominate issues of fact and law concerning the implementation of this waiver policy and its legality.

Defendant argues that individual issues predominate over the common issues because it intends to invoke the "nature of the work" exception, which will be necessarily individualized. We disagree. We must be cautious of a defendant invoking the "nature of the work" exception on the grounds that there are "case-by-case, shift-by-shift" differences, because this "would potentially eviscerate the protections provided by California Labor Code § 226.7, as every employer would defend against a claim of missed meal periods by arguing that, because of the nature of the employee's work on that day, he was too busy to take a break." *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *4 (E.D. Cal. June 13, 2006). The "nature of the work" exception only applies in cases where it is "virtually impossible" to allow for an off-duty meal period. Department of Labor Standards Enforcement Opinion Letter 2002.09.04. The 103 employee declarations provided by Defendant at best establish that the declarants' job descriptions varied; but it is not clear how *any* of these job descriptions would qualify for the nature of the work exception. The variety of the work itself is immaterial unless the particular nature of certain job duties prevents an off-duty meal break from being taken. No evidence has been offered by Defendant that certain worksites presented such unique considerations that employees were unable to take an off-duty meal break. On the contrary, given the admission that a large majority of Defendant's employees work at single guard posts and therefore cannot be relieved of duty, a common legal question that is presented and susceptible to class-wide determination is whether the nature of the work exception applies to Defendant's single guard post staffing model.

---

instant Motion would be the same irrespective of our consideration of the declarations, and since Defendant represents that the declarations have now been disclosed in a supplemental initial disclosure, (Dkt. No. 45, Boughton Decl., Ex. 2), we do not reach the issue of whether the declarations should be excluded.

[6] Accordingly, Defendant's reliance on *Faulkinbury v. Boyd & Associates, Inc.*, 112 Cal. Rptr. 3d. 72 (2010), *petition for review granted*, 117 Cal. Rptr. 3d 1 (2010), is misplaced. Unlike *Faulkinbury*, where despite a uniform policy of requiring employees to consent to an on-duty meal agreement, there was nonetheless wide variation in whether the putative subclass employees *actually* took on-duty or off-duty meals, we have here a uniform policy and a uniform practice of requiring on-duty meal breaks. *See id.* at 87. We also note that subsequent to the filing of the Motion, on October 13, 2010, the California Supreme Court granted review in *Faulkinbury*, and therefore, according to California Rules of Court 8.1105(e)(1), *Faulkinbury* is no longer considered a published decision.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

Plaintiffs Abdullah, Kimbrough, and Aguilar's claims are typical of this subclass because they were subject to Defendant's uniform policy. All three Plaintiffs have declared that they were not given off-duty meal breaks because they were not allowed to abandon their posts. (Abdullah Decl. ¶¶ 5, 7; Kimbrough Decl. ¶ 6; Aguilar Decl. ¶¶ 5-7).

However, as to the rest break component of this proposed subclass, we find that there are insufficient common issues of fact and that individual issues would predominate. An employer must authorize and permit a rest period for every four hours worked or pay the employee one hour of pay at the employee's regular rate for each workday the rest break is not provided. Cal. Labor Code § 226.7(b); Industrial Welfare Commission Wage Order No. 4 § 12. However, employers are not required to compel employees to take rest breaks; only to provide and authorize them. *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085-86 (N.D. Cal. 2007).

Plaintiffs have not produced evidence of a common issue of law regarding Defendant's rest break policy. The putative class members were not required to sign any sort of consent agreement governing rest breaks. All of the testimony cited by Plaintiffs in support of certification of the rest break subclass actually involves the deponent's testimony about Defendant's *meal break* policy. Plaintiffs urge the inference that since employees were not allowed to leave their post for an off-duty meal break, they must not have been allowed to take an off-duty rest break either. However, Plaintiffs have provided no evidence that this was Defendant's common policy and such an inference is unsupported by the record. Each of the named Plaintiffs admits to having taken regular rest breaks during certain postings. (*See* Dkt. No. 42, Boughton Decl., Ex. 8, Abdullah Depo. 155:1-156:13; *id.*, Ex. 10, Aguilar Depo. 74:10-75:15; *id.*, Ex. 11, Kimbrough Depo. 45:17-46:14). To the extent that Plaintiffs have produced evidence showing that on particular occasions rest breaks were improperly denied, we conclude that such claims are not susceptible to class-wide treatment because we would have to undertake individualized determinations as to each putative subclass member.

Therefore, only the meal break component of subclass (b) shall be certified. Accordingly, we certify the following subclass: "a Subclass of all of Defendant's past and present California Security Guard/Officer employees who worked more than six hours and were not provided a checked-out meal break in any work shift from July 1, 2007 through the present, and who were not compensated for such on-duty meal break(s) pursuant to California Labor Code §226.7(b)."

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

### 2.   Subclasses (c) and (e) (reimbursement)[7]

California Labor Code § 2802 requires that employers "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Plaintiffs allege that Defendant had a policy of failing to provide reimbursement for the costs incurred by the putative subclass members in maintaining their uniforms, obtaining required training, licenses, and certifications, and for the mileage costs of using their personal vehicles to patrol worksites and to travel between worksites.

####   *i.   Uniform Maintenance*

Section 9 of Industrial Welfare Commission Wage Order 8 provides that "when uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." *See also California Dairies, Inc. V. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1044 (E.D. Cal 2009). Plaintiffs have established that Defendant had a class-wide policy of requiring the putative subclass members to maintain their own uniforms. Employees were required to sign an "Employee Uniform Agreement" prior to being hired, (Dkt. No. 36, Whitehead Decl., Ex. D), which required that the employee maintain and return the uniform in a clean condition or otherwise reimburse Defendant for the cost of cleaning the uniform. Defendant responds that it has never charged any employee under this provision. However, this does not speak to Plaintiffs' argument that Defendant failed, as a matter of policy, to provide maintenance for uniforms. There is nothing to suggest a lack of commonality among the putative subclass or that individual issues predominate.

Therefore, we certify the following subclass: "a subclass of all of Defendant's past and present California Security Guard/Officer employees whom Defendant required to maintain a uniform during the period from July 1, 2007 to the present, and who were not provided reimbursement."

Plaintiffs Abdullah and Kimbrough's claims are typical of the uniform maintenance subclass because they have declared that they were responsible for cleaning their own uniforms and were never provided reimbursement. (Abdullah Decl. ¶ 4; Kimbrough Decl. ¶ 4).

---

[7] Plaintiffs have defined the two putative subclasses as: first, "a subclass of all of Defendants' [sic] past and present California Security Guard/Officer employees who were not reimbursed for all work-related expenses during the period from July 1, 2007 to the present;" and second, "a subclass of all of Defendants' [sic] past and present California Security Guard/Officer employees whom Defendants [sic] required to maintain a uniform during the period from July 1, 2007 to the present[.]" (SAC ¶¶ 18(c), (e)). We conclude that these definitions are imprecise absent the modifications we make in our discussion. We have set forth three subclasses in the interest of clarity.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

### ii. *Mileage Expenses*

Plaintiffs have further established that there was a company-wide policy of not reimbursing employees for the mileage costs of operating their private vehicles for work-related purposes. Defendant has admitted that its policy is not to reimburse employees for using their personal vehicles to travel between job sites during the workday when the job sites are within a 50-mile radius of the employee's home. (Flury Depo. 62:1-21; 103:2-11). Defendant has also admitted that it has no policy in place to ensure that employees who use their personal vehicles to patrol their job site are reimbursed for mileage. (*Id.* 100:8-101:22). Defendant argues that some employees never incurred mileage expenses, while others that sought reimbursement received it. Certainly, those employees who did not suffer an injury would not have standing as subclass members. Defendant's own records should reveal which employees received reimbursement for mileage expenses. The law requires that "[o]nce an employer knows or has reason to know that the employee has incurred an expense, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is reimbursed for the expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009). Given Defendant's common policies, common issues of fact and law predominate over individual instances where expenses were not incurred or were reimbursed upon request.

Therefore, we certify the following subclass: "a subclass of all of Defendant's past and present California Security Guard/Officer employees who were not reimbursed for the mileage costs of operating a personal vehicle in carrying out work-related duties during the period from July 1, 2007 to the present."

Plaintiffs Abdullah and Kimbrough's claims are typical of the mileage reimbursement subclass because they have both declared that they used their personal vehicles to patrol their work site and did not always receive reimbursement, and Kimbrough has declared that he was sometimes required to drive to various locations during his shift using his personal vehicle and was not reimbursed. (Abdullah Decl. ¶ 3; Kimbrough Decl. ¶ 3).

### iii. *Mandatory Training, Licensing, and Certifications*

Finally, Plaintiffs have shown that Defendant had a company-wide policy of requiring its employees to obtain specialized licenses and certifications without reimbursing them for their costs. (Flury Depo. 43:25-44:10; 45:9-18). Defendant argues that several employees were reimbursed for their training. However, the common issues of fact and law presented by the company-wide policy predominate over any such individual instances of reimbursements.

Therefore, we certify the following subclass: "a subclass of all of Defendant's past and present California Security Guard/Officer employees who were not reimbursed for mandatory training, licensing, and certifications during the period from July 1, 2007 to the present."

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

Plaintiff Kimbrough's claims are typical of this subclass because he has declared that he was required to pay for training and licenses, including CPR and First Aid, and was not reimbursed. (Kimbrough Decl. ¶ 5).

### 3. Subclass (a) (vacation)[8]

California Labor Code § 227.3 requires that when "an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with . . . [the] employer policy respecting eligibility or time served." "The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered . . . . [A] proportionate right to a paid vacation 'vests' as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay." *Saustez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 784 (1982).

Plaintiffs present several theories of recovery. First, Plaintiff Abdullah contends that he was not paid the correct number of accrued vacation hours, and not at his final wage rate. (Abdullah Decl. ¶ 8). This is insufficient to establish a common question affecting the subclass. Plaintiffs have pointed to the testimony of Defendant's PMK that branch managers were responsible for deciding the appropriate rate to pay accrued vacation time. (Flury Depo. 153:12-154:7). However, Plaintiffs have presented no evidence that there was a systematic policy of discounting the number of hours owed for accrued vacation, or compensating accrued vacation at a rate other than the employee's final rate. Plaintiffs have also presented no evidence of any person, other than Plaintiff Abdullah, who received inaccurate compensation for accrued vacation because of these claimed errors.

Plaintiffs next argue that the Employee Handbook policy is to credit accrued vacation pay to a former employee if they are rehired within 180 days. But none of the named Plaintiffs suffered this injury and none of them can represent this purported subclass.

Finally, Plaintiffs argue that Defendant's "retention bonus," which is offered to employees after they complete an initial 2,080 hours of work, is actually a "subterfuge" for vacation pay that is otherwise accruable pursuant to Labor Code § 227.3. *See also Saustez*, 31 Cal. 3d at 784 (requiring pro rata share of accrued vacation pay upon termination). Plaintiffs' theory is that since the retention bonus is worth 40 hours of pay, and after reaching an initial 2,080 of work the employee begins accumulating vacation benefits at an identical rate of 40 hours of vacation time for each subsequent 2,080 worked, the retention bonus is, in reality, vacation pay. Therefore, Plaintiffs argue, those employees who are discharged

---

[8] Plaintiffs have defined the putative subclass as: "a subclass of all of Defendants' [sic] former California Security Guard/Officer employees whose employment ended between July 1, 2007 and the present who were not paid at the end of their employment all vested, unused vacation wages, including floating holidays, personal days, and other time off benefits[.]" (SAC ¶ 18(a)). We conclude that this definition is imprecise absent the modification we make in our discussion.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

before reaching the initial 2,080 hours worked, and who therefore did not receive the retention bonus, are entitled to a pro rata share of the retention bonus as vacation pay upon discharge. Whether Defendant's retention bonus policy should be considered vacation pay presents a common question of law. Defendant argues that it is permissible to offer a retention bonus rather than vacation pay. However, this argument goes to the merits. Defendant also argues that an individualized evaluation of each employee would be necessary because the dictionary definition of "subterfuge" includes an element of deceit. We disagree. The policy is subject to a common legal inquiry.

Therefore, we certify the following subclass: "a subclass of all of Defendant's former California Security Guard/Officer employees whose employment ended between July 1, 2007 and the present, and whose employment totaled fewer than 2,080 hours and who were not paid at the end of their employment any vested, unused vacation wages."[9] While we, of course, do not purport to decide on this Motion whether the so-called retention bonus is in actuality vacation pay, this definition permits a class-wide determination on this legal issue, and recovery by members of this subclass only were we to conclude that the retention bonus is in reality vacation pay.

Plaintiff Kimbrough's claims are typical of this subclass because he was terminated before reaching an initial 2,080 hours of employment and did not receive vacation wages or any part of the retention bonus, however characterized. (Kimbrough Decl. ¶¶ 10-11). However, Plaintiff Aguilar, who is also designated as a subclass representative, brings a claim that is not typical of this subclass because she asserts that she in fact worked 2,080 hours, yet failed to receive a retention bonus. (Aguilar Decl. ¶ 9). There is no evidence that Defendant has a policy of not paying the retention bonus even after an employee has worked 2,080 hours. Plaintiff Aguilar's individualized complaint does not qualify her as an adequate class representative. Therefore, only Plaintiff Kimbrough is designated a representative of this subclass.

### 4. Subclasses (f) and (g) (off-the-clock)[10]

Plaintiffs seek to certify two subclasses related to Defendant's failure to provide compensation to employees who worked at multiple job sites throughout the day and did not receive compensation from Defendant for time spent traveling between the sites. However, none of the named Plaintiffs is

---

[9] Plaintiffs' proposed subclass definition also includes those employees who were not paid for "floating holidays, personal days, and other time off benefits." (SAC ¶ 18(a)). It is unclear if these desigations are synonymous with vacation pay. Even if they are not synonymous with vacation pay, there has been no showing of any justification for class-treatment on these bases.

[10] Plaintiffs have defined the putative subclasses as follows: first, "a subclass of all of Defendants' [sic] past and present California Security Guard/Officer employees during the period from July 1, 2007 to the present whom [sic] were denied proper wages;" and second, "a subclass of all of Defendants' [sic] past and present California Security Guard/Officer employees during the period from July 1, 2007 to the present whom [sic] were denied minimum wages[.]" (SAC ¶¶ 18(f), (g)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

E-Filed

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

representative of any of these subclasses. Although Kimbrough is designated as the representative of subclass (f), a review of his declaration reveals no statement that he was denied wages for the time spent traveling in his personal vehicle for work-related purposes. Moreover, the Memorandum of Points and Authorities offers no specific analysis as to Kimbrough's claim as to this subclass, let alone how they are typical of the putative subclass. None of the named Plaintiffs is expressly designated as a representative for subclass (g) and no analysis is provided as to how any of the Plaintiffs were not paid a minimum wage, or how such claim for unpaid minimum wage is typical of the class. Certification of these subclasses is **DENIED**.

    5.    **Subclass (d) (wage statements)**[11]

California Labor Code § 226(a) requires every employer to "furnish each of his or her employees . . . an accurate itemized statement in writing." Under § 226(e), "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled" to recovery. This subclass is derivative of the other subclasses. Plaintiffs argue that on account of Defendant's failure to pay, *inter alia*, premium pay for missed meal breaks and pro rata vacation pay upon discharge, the putative subclass members' wage statements were inaccurate. Herein we certify these other subclasses, so this subclass should be certified as well. Defendant argues that many putative subclass members have provided declarations that they were not injured. However, this is a legal conclusion and goes to the merits.[12] All of the named Plaintiffs are designated as representatives of this subclass and each has derivative claims typical of the other subclasses to which they are members.

Therefore, we certify the following subclass: "a subclass of all of Defendant's past and present California employees who worked as Security Guard/Officers from July 1, 2007 to the present who, due to the violations claimed in one or more of the other certified subclasses, received an inaccurate itemized wage statement."

---

[11] Plaintiffs have defined the putative subclass as: "a subclass of all of Defendants' [sic] past and present California employees who worked as Security Guard/Officers from July 1, 2007 through the present who received an itemized wage statement[.]" (SAC ¶ 18(d)). We conclude that this definition is overbroad absent the limitation we impose in our discussion.

[12] The first clause of § 226(e) requires an "injury," and the penalty provision entitles a plaintiff to recover either actual damages or statutory damages. The statute makes clear that an injury must be more than the mere occurrence of a violation (a non-compliant statement). Otherwise, the statute would have no injury requirement – it could simply have been written to allow an employee receiving a non-compliant wage statement to recover actual or statutory damages. However, "[l]ost wages is a form of 'all actual damages,' which is recoverable under that statute." *Cornn v. United Parcel Service*, No. C03-2001 TEH, 2006 U.S. Dist. LEXIS 9013, at *9 (N.D. Cal. Feb. 22, 2006) (citations omitted). Therefore, if on account of the violations identified in the certified subclasses, class members did not receive their full wage, they have suffered an injury.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | *Muhammed Abdullah, et al. v. U.S. Security Associates, Inc.* | | |

### 6. Subclass (k) (waiting time)[13]

California Labor Code § 201 requires that employees be paid on their last day of actual work or within 72 hours thereof. Plaintiffs argue that since wages were owed but unpaid as a consequence of the violations outlined in the other subclasses, the putative subclass members have not been paid within 72 hours of the end of their employment. This derivative theory of recovery presents common and predominate issues of fact and law. Defendant's argument that a determination of "wilfulness" would require case-by-case analysis is unavailing because Plaintiffs' theory applies to Defendant's policy, not individual decisions as to particular employees.

Therefore, we certify the following subclass: "a subclass of all of Defendant's California employees who worked as Security Guard/Officers from July 1, 2007 to the present who were not paid wages within 72 hours of their termination and who qualify as a member of one of the other certified subclasses."[14]

## IV.   Conclusion

In light of the foregoing, Plaintiffs' Motion is **GRANTED**.[15] We certify "a class of all of Defendant's current and former Security Guard/Officer employees in California from July 1, 2007 to the present, and who qualify as a member of one or more of the certified subclasses." We also certify the following subclasses:

---

[13] Plaintiffs have defined the subclass as: "a subclass of all of Defendants' [sic] past and present California Security Guard/Officer employees during the period from July 1, 2007 to the present who from Defendants' [sic] records were paid wages beyond 72 hours from the date of the end of their employment." (SAC ¶ 18(k)). For the reasons set forth in our discussion, we modify this definition as indicated.

[14] Because this subclass's claims are entirely derivative of the violations outlined in the other certified subclasses, and no other of Defendant's policies present common and predominate issues of fact and law, to have standing as a member of this subclass, a subclass member must also be a member of one of the other certified subclasses. Plaintiffs have presented a separate non-derivative theory of recovery by arguing that Defendant has a policy of suspending an employee prior to termination to circumvent the requirements of California Labor Code § 201. However, Plaintiffs' declarations do not state that they were subjected to suspension prior to termination and Plaintiffs' Memorandum of Points and Authorities fails to identify any such Plaintiffs. Accordingly, Plaintiffs are inadequate representatives of this subclass under this theory.

[15] Plaintiffs have sought "certification of the Class and each of the Subclasses as to the UCL claim." (Mot. at 22). Since the UCL claim is entirely derivative of the other subclasses, we do not need to separately certify it. Plaintiffs may pursue this claim as to any of the subclasses we have certified herein.

| | | |
|---|---|---|
| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 12 of 13 |

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-9554-GHK (Ex) | Date | January 11, 2011 |
| Title | Muhammed Abdullah, et al. v. U.S. Security Associates, Inc. | | |

- <u>Meal Break Subclass</u>. A Subclass of all of Defendant's past and present California Security Guard/Officer employees who worked more than six hours and were not provided a checked-out meal break in any work shift from July 1, 2007 through the present, and who were not compensated for such on-duty meal break(s) pursuant to California Labor Code §226.7(b).
- <u>Uniform Maintenance Subclass</u>. A subclass of all of Defendant's past and present California Security Guard/Officer employees whom Defendant required to maintain a uniform during the period from July 1, 2007 to the present, and who were not provided reimbursement.
- <u>Mileage Expenses Subclass</u>. A subclass of all of Defendant's past and present California Security Guard/Officer employees who were not reimbursed for the mileage costs of operating a personal vehicle in carrying out work-related duties during the period from July 1, 2007 to the present.
- <u>Mandatory Training, Licensing, and Certifications Subclass</u>. A subclass of all of Defendant's past and present California Security Guard/Officer employees who were not reimbursed for mandatory training, licensing, and certifications during the period from July 1, 2007 to the present.
- <u>Vacation Subclass</u>. A subclass of all of Defendant's former California Security Guard/Officer employees whose employment ended between July 1, 2007 and the present, and whose employment totaled fewer than 2,080 hours and who were not paid at the end of their employment any vested, unused vacation wages.
- <u>Wage Statements Subclass</u>. A subclass of all of Defendant's past and present California employees who worked as Security Guard/Officers from July 1, 2007 to the present who, due to the violations claimed in one or more of the other certified subclasses, received an inaccurate itemized wage statement.
- <u>Waiting Time Subclass</u>. A subclass of all of Defendant's California employees who worked as Security Guard/Officers from July 1, 2007 to the present who were not paid wages within 72 hours of their termination and who qualify as a member of one of the other certified subclasses.

**IT IS SO ORDERED.**

| | -- : -- |
|---|---|
| Initials of Deputy Clerk | Bea |