Nina Kani (Bar No. 221652)
*nkani@kanilaw.com*
**KANI LAW GROUP**
895 Dove Street, Suite 300
Newport Beach, CA 92660
Tel: (949) 955-4994

Rana S. Ziaee (Bar No. 226238)
*rsz@zlplc.com*
**ZIAEE LAW**
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Tel: (949) 544-1260
Fax: (949) 544-1269

Attorneys for Plaintiffs and Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE STANO, BENNY SHU, MARIO GUERRERO, MARY CARMONA (ROUSSE), individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>IPC INTERNATIONAL CORPORATION, WHICH WILL DO BUSINESS IN CALIFORNIA AS ILLINOIS PROTECTION CORPORATION, a California corporation; IPC INTERNATIONAL CORPORATION, an Illinois Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO.: SACV12-00088 DOC (RNBx)<br><br>**PLAINTIFFS' <u>OPPOSITION</u> TO MOTION TO DENY CLASS CERTIFICATION**<br><br>Date:       November 5, 2012<br>Time:       8:30 a.m.<br>Courtroom: 9D<br>Judge:       David O. Carter. |

1
2

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY. .............................................. 1

II.  DEFENDANT'S MOTION TO DENY CERTIFICATION DOES NOT COMPLY WITH L.R. 7-3 AND IS OTHERWISE INAPPROPRIATE. ................. 2

    A.  IPC Did Not Comply with Local Rule 7-3. ................................ 2

    B.  IPC Improperly Attempts to File Its Opposition to Class Certification as a Concurrent Motion. .................................. 3

III.  DEFENDANT'S SELF-SERVING AND CONTRADICTORY DECLARATIONS DO NOT DEFEAT CLASS CERTIFICATION. .......................... 4

IV.  PLAINTIFFS HAVE ESTABLISHED COMMONALITY OF THEIR CLAIMS. ...................................................................................... 5

    A.  IPC Has A Common Policy Of Denying Meal and Rest Breaks To Security Officers ........................................................ 6

        1.  *All Security Officers in California Were Subject To The Same On-the-Job Meal and Rest Break Policy* ........................ 6

        2.  *Defendant's On-Duty Rest Break Policy Is Not Defensible.* .................... 9

        3.  *Defendant's Evidence As To Fashion Island Is a Red-Herring* .............. 10

    B.  IPC Has A Common Policy Of Denying Pay for All Hours Worked ......... 11

    C.  Common Issues Predominate as to Timely Payment of Wages and Failure to Provide Accurate Itemized Wage Statements. ...................... 15

V.  DEFENDANT'S DEFENSES CANNOT DEFEAT CERTIFICATION. ........ 15

VI.  THE CLASS IS ASCERTAINABLE. ............................................... 17

VII.  THE CLASS HAS AND WILL CONTINUE TO BE REPRESENTED ADEQUATELY AND WITHOUT CONFLICTS. ....................................... 19

    A.  Despite Defendant's Obstructionist Tactics, Plaintiffs' Counsel Has Vigorously represented Plaintiffs and the Putative Class. ................. 20

    B.  Defendant's Fail to Present Any Evidence of A Conflict ...................... 21

    C.  The Court May Clarify the Class Definition. ............................... 22

    D.  The Mere Fact that An Individual Suit Is Pending Does Not Create a Conflict of Interest or Show Lack of Adequate Representation. ............... 24

## TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Security Associates, Inc.*, Case No. CV 09-9554, at p. 2 n.2 (C.D. Cal. January 11, 2011) ..........................................................................................23

*Adoma v. University of Phoenix, Inc.*, 270 F.R.D. 543, 550 (E.D. Cal. 2010)..................17

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 521-522 (C.D. Cal. Jun. 17, 2011) ..........15, 17

*Anderson v. Mt. Clemens Pottery Co*, 328 U.S. 680, 692 (1946).....................................16

*Armstrong v. David,* 275 F.3d 849, 872 (9th Cir. 1987),

 abrogated on other ground by *Johnson v. California*, 543 U.S. 499, 504-505 (2005)....23

*Avilez v. Pinkerton Government Services*, No. SACV 11-0493 DOC (RZx) (C.D. Cal. Oct. 9, 2012) .......................................................................................................5, 9, 15

*Belt v. Emcare Inc.,* 299 F.Supp.2d 664, 558 (E.D. Tex. 2003).........................................4

*Brazil v. Dell, Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008) ...............................................23

*Brinke Rest. Corp.*, 53 Cal. 4th 1004 (2012) ...............................................................8, 11

*Carlson v. General Motors Corp.,* Civ. A. No. 2-86-2674-a, 1991 WL 90893, *2 (D.S.C. Mar. 14, 1991) .........................................................................................19

*Cervantez v. Celestica Corp.,* No. EDCV-07-727-VAP (OPx)2010 WL 2712267 *1 n.1 (C.D. Cal. July 6, 2010)...........................................................................................23

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002)........................................2

*Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 U.S. Dist. LEXIS 101127, *17-19 (N.D. Cal. Sept. 8, 2011) ..........................................................................................9

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633, 636 (S.D. Cal. 2010).....................9

*Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 WL 420191 *3 (N.D. Cal. Feb. 5, 2007).........................................................................................19

*Doe v. Unocal Corp.,* 67 F.Supp.2d 1140, 1143 (C.D. Cal. 1999)...................................23

*Gentry v. Superior Court,* 42 Cal.4th 443, 460-61, 165 P.3d 556, 566 (2007) ...................5

*Gonzalez v. Millard Mall Services, Inc.*, 281 F.R.D. 455 (S.D. Cal. March 2, 2012).................................................................................7, 8, 15

*Hagen v. City of Winnemucca*, 108 F.R.D. 61, 64 (D.Nev. 1985) .................................23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ........................5, 20

*Heffelfinger v. Electronic Data Systems Corp.*, CV 07-00101 MMM Ex, 2008 WL
   8128621 (C.D. Cal. Jan. 7, 2008), *affirmed and remanded,* 08-56319, 2012 WL
   2045960 (9th Cir. June 7, 2012) ..................................................... 18, 19

*Jimenez v. Allstate Ins. Co.*, LA CV 10-08486 JAK, 2012 WL 1366052 *9-10 (C.D. Cal.
   Apr. 18, 2012).......................................................................... 12, 17

*Kamar v. RadioShack Corp.*, 375 Fed.App. 734, 726 (9th Cir. 2010) ..................17, 18, 23

*Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1465 (9th Cir. 1995) .....................................25

*Kirola v. City of San Francisco,* No. C-07-03685, 2011 WL1330853
   (N.D. Cal. April 4, 2011) .............................................................23

*Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536, 551 (D. Idaho 2010) .................23

*Lindow v. U.S.*, 738 F.2d 1057, 1063 (9th Cir. 1984)........................................16

*Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Stands, Inc.,*
   244 F.3d 1152, 1162 (9th Cir. 2001). ...............................................5

*Mahoney v. Farmers Ins. Exch.,* No. 4:09-cv-2327, 2011 WL 4458513 (S.D. Tex. Sept.
   23, 2011)..............................................................................17

*Mazur v. eBay, Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) .....................................23

*McCullough v. City of Rialto*, 2006 WL 5582215, No. 05-6154, at *2 (C.D. Cal. March
   21, 2006)..............................................................................2

*Mevorah v. Wells Fargo Home Mortg., Inc.,* No. C 05-1175 MHP, 2005 WL 4813532
   (N.D. Cal. Nov. 17, 2005) ...........................................................4, 5

*Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956)..................................11

*Moreno v. Autozone, Inc.*, 251 F.R.D. 417 (N.D. Cal. 2008) .............................24

Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094, 114 (2007)..................8, 15

*Neung Kang v. PB Fasteners*, 268 Fed. Appx. 545, 548 (9th Cir. 2008)..........................2

*Ortega v. J.B. Hunt Transp., Inc.* 258 F.R.D. 361, 367 (C.D. Cal. 2009)........................5

*Penk v, Oregon State Bd. Of Higher Educ.*, 816 F.2d 458, 467 (9th Cir. 1987) ...............23

*Reich v. Monfort*, 144 F.3d 1329, 1333-1334 (10th Cir. 1998).........................................16

*Ricaldai v. US Investigations Services, LLC*, __F.Supp.2d.__, No. CV 1-07388 DDP (PLAx), 2012 WL 2930474, *8 n.4 (C.D. Cal. May 25, 2012) ....................................15

*Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1062 (9th Cir. 2010) ...............................12, 16

*Schulz v. Qualxserv, LLC,* NO. 09-CV-17- AJB (MDD), 2012 U.S. Dist. LEXIS 58561 at *10-12 (S.D. Cal. Apr. 26, 2012) ...................................................................................9

*Spears ex. Re. v. First American eAppraiseIT*, No. C-08-00868 RMW, 2010 WL 2674031 (N.D. Cal. 2010) ...................................................................................................21, 22

*Thomasson v. CG Services Limited Partnership,* 275 F.R.D. 309 (S.D. Cal. 2011).........23

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp.2d 1114, 1121 (E.D. Cal. 2009)......17

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009)............................3

*Xuifang Situ v. Leavitt*, 240 F.R.D. 551, 558-559 (N.D. Cal. Jan. 12, 2007) ...................23

*Yasharal v. County of Los Angeles,* 170 Fed. Appx. 449, 451 (9th Cir. 2006) ...................2

**Federal Statutes**

Fed. R. Civ. Proc. 23 ..............................................................................................................5

Fed. R. Civ. Proc. 23(a) ......................................................................................................6, 8

Fed. R. Civ. Proc. 23(a)(4)...................................................................................................19

Fed. R. Civ. Proc. 23(b)(3) ....................................................................................................6

Fed. R. Civ. Proc. 30(b)(6) ..................................................................................................20

**California Statute**

Labor Code §§203.........................................................................................................6, 15

Labor Code §226.....................................................................................................6, 9, 15

Labor Code §226(a) .............................................................................................................15

Labor Code §226.7...........................................................................................6, 8, 9, 10, 11

Labor Code §1194.................................................................................................................6

**Other Authorities**

IWC Wage Order No. 4-2001 ....................................................................6, 9, 10, 11

IWC Wage Order No. 4-2001 § 11(b) ..................................................................................8

Op. Letter, DLSE (Feb. 22, 2002) ........................................................................................9

**Rules**

C.D. Cal. Local Rule 7-3 ............................................................... 1, 2, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND SUMMARY.

The Court should deny the Motion to Deny Class Certification filed by Defendant IPC International Corporation ("Defendant" or "IPC") because it was filed in contravention of Local Rules.  Defendant blatantly disregarded Local Rule 7-3 and never met and conferred prior to filing this motion.  In fact, Defendant filed its motion, even while knowing that Plaintiffs were filing a *concurrent* motion for class certification.  Defendant's filing is improper under both circumstances and should be denied on that basis alone.

Even if Defendant's motion has procedural merit, which it does not, it still fails to persuade on substance.  Ironically, what Defendant has done is put into the record evidence of IPC common policies with regard to meal breaks, rest breaks, and off-the-clock work, all which actually supports class adjudication of Plaintiffs' claims.  Indeed, the Executive Vice President of IPC has openly declared that IPC locations *everywhere* use the identical meal and rest beak policy, the same policy which states ***"Officers are to remain available to respond to calls at all times while on duty on Center Property, even during meals and breaks."***  By virtue of Defendant's own admission, there can be no doubt that IPC has a common policy of denying its officers off duty meal and rest breaks.

Likewise, Defendant does nothing to dispel the common policy and practice of requiring officers to work off-the-clock.  To the contrary, Defendant's own executive once and again explains that IPC has another common policy – a company-wide rounding system – that automatically adjusts employee time worked to the nearest quarter hour, while at the same maintaining an Attendance Policy which requires officer to arrive *early* in order to prepare for duty, knowing full well that the time employees work before their shift is rounded up.  Worst still, the Attendance Policy prevents the officers from ever "evening out" or "making up" the time lost in rounding because it punishes tardiness with termination.  It makes no different that different IPC locations have different gear and/or clocking in procedures, or that certain officers get ready faster than others.  What is

common throughout IPC is that up to fourteen minutes a day of time is consistently and affirmatively taken away from employees by virtue of the IPC rounding and attendance policies, which together deny employees due wages for all hours worked.

## II.   DEFENDANT'S MOTION TO DENY CERTIFICATION DOES NOT COMPLY WITH L.R. 7-3 AND IS OTHERWISE INAPPROPRIATE.

Defendant has altogether failed to comply with Local Rule 7-3 prior to filings its Motion to Deny Class Certification.  Moreover, Defendant's surreptitious filing of a _contemporaneous_ (not preemptive) Motion to Deny Class Certification is inappropriate and contravenes principles of judicial efficiency.

### A. IPC DID NOT COMPLY WITH LOCAL RULE 7-3.

Local Rule 7-3 clearly requires that: "[C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person*, the substance of the contemplated motion and any potential resolution." C.D. Cal. LR 7-3). Local Rule 7-3 further requires the notice of motion contain the following language: "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." (Id.)

The Ninth Circuit and this district have demonstrated that violations of Local Rule 7-3 may be serious enough to deny or strike motions where a party fails to strictly comply with the rule. *Neung Kang v. PB Fasteners*, 268 Fed. Appx. 545, 548 (9th Cir. 2008) (no abuse of discretion when court struck motion for failure to comply with Local Rule 7-3); *Yasharal v. County of Los Angeles,* 170 Fed. Appx. 449, 451 (9th Cir. 2006) (court did not abuse its discretion by refusing to consider motion after repeated failure to comply with Local Rule 7-3); *McCullough v. City of Rialto*, 2006 WL 5582215, No. 05-6154, at *2 (C.D. Cal. March 21, 2006) (denying motion for failure to hold a meet and confer conference to discuss the merits of the motion prior to filing it).  Indeed, "[t]he district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002), *cited in Yaharal,* 170 Fed.Appx. at 451.

1    Defendant blatantly disregarded both the language and spirit of Local Rule 7-3.

2    Counsel for Defendant never requested a meet and confer on its completed motion to

3    deny class certification. (Kani Decl., ¶4.)  The Notice of Motion does not state the

4    requisite Local Rule 7-3 compliance language, nor could it. (Kani Decl., ¶5.)  Worse yet,

5    during two Local Rule 7-3 meet and confer sessions between the parties *on Plaintiff's*

6    *Motion for Class Certification*, Defendant *never conveyed that they intended on filing a*

7    *Motion to Deny Certification*. (Kani Decl., ¶4.)

8    In reality, Defendant knew for months that Plaintiff's Motion for Class

9    Certification was scheduled to be heard on November 5, 2012. (Kani Decl., ¶6; Exh. A to

10   Kani Decl.)  Defendant also knew, as a result of meet and confer sessions that Plaintiffs

11   intended on filing their motion for class certification as scheduled. (Kani Decl., ¶4.)  In

12   fact, Defendant's refused counsel for Plaintiff's requests to stipulate on certain facts so

13   that briefing on certification can be more streamlined. (Kani Decl., ¶7.)  Nonetheless,

14   Defendant quietly moved forward with filing its Motion to Deny Class Certification the

15   same day as Plaintiffs' Motion for Class Certification.  The Court should deny

16   Defendant's Motion to Deny Class Certification for its blatant refusal to comply with

17   Local Rule 7-3.

18   **B. IPC IMPROPERLY ATTEMPTS TO FILE ITS OPPOSITION TO CLASS CERTIFICATION**

19   **AS A CONCURRENT MOTION.**

20   Defendant relies on *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th

21   Cir. 2009) for the notion that its "preemptive" Motion to Deny Class Certification is

22   permissible. (Def.'s Mot. to Deny Cert., Doc. 31, at p.1, n.1].)  While Plaintiffs do not

23   dispute that, under certain circumstances, preemptive motions to deny certification are

24   permissible, such motions are generally brought a motion for class certification has yet to

25   be filed.  *See Vinole*, 571 F.3d at 941 ("A defendant may move to deny class certification

26   befor*e* a plaintiff files a motion to certify a class.")  Further, the preemptive motion is

27   generally appropriate where the plaintiff has had "adequate time in which to conduct

28   discovery related to questions of class certification…" *Id.* at 942.

As discussed herein, Defendant has taken obstructionist stance on class discovery[1]. Beyond discovery issues, however, Defendant's Motion for Class Certification was improperly brought *concurrently* – not preemptively – with Plaintiffs' Motion for Class Certification. (Kani Decl., ¶5.)  This "concurrent" motion to deny class certification is nothing more than a tactical move to increase page limits and briefing, as the parties crisscross between filing oppositions and replies.  Such tactical maneuverings contravene principles of judicial economy and are inappropriate.

## III.   DEFENDANT'S   SELF-SERVING   AND   CONTRADICTORY DECLARATIONS DO NOT DEFEAT CLASS CERTIFICATION.

Defendant supports its assertion that individual issues predominate by submitting declarations of *current* employees.  Plaintiffs have filed objections to the declarations, as they in large part lack foundation and are otherwise inadmissible. (*See* Plaintiffs' concurrently filed Evidentiary Objections and Motion to Strike).

Beyond being inherently false, the declarations of current employees are self-serving and carry little credibility.  Courts have repeatedly recognized the inherent coercive power of employers when obtaining employee declarations.  There is a "heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive." *Mevorah v. Wells Fargo Home Mortg., Inc.,* No. C 05-1175 MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) (quoting *Belt v. Emcare Inc.,* 299 F.Supp.2d 664, 558 (E.D. Tex. 2003).  The collection of declarations from current employees is even more coercive in nature:

> [T]his is a case that goes further than the employer disseminating information to its employees; it also involves the solicitation of signed declarations, thus committing employees who are potential class members to a set of facts that may be adverse to their interest … The opportunity for mischief is compounded by the relationship between the employer and the employee and the coerciveness an employee may feel.

---

[1] *See also, infra.* ¶VIII(A).

*Mevorah v. Wells Fargo Home Mortg., Inc.,* No. C 05-1175 MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005).  The same principles were recently noted by this Court:

> The risk an employee assumes by informing her employer that she does not like its allegedly illegal practice is well documented.  The California Supreme Court has recently noticed that "retaliation against employees for asserting statutory rights under [California] Labor Code is widespread,"…

*Avilez v. Pinkerton Government Services*, No. SACV 11-0493 DOC (RZx), at p.10, n.9 (C.D. Cal. Oct. 9, 2012) (*quoting Gentry v. Superior Court,* 42 Cal.4th 443, 460-61, 165 P.3d 556, 566 (2007)).    Accordingly, if the Court were to consider Defendant's declarations, in spite of their evidentiary flaws, these should declarations carry little, if any, weight.

## IV.    PLAINTIFFS HAVE ESTABLISHED COMMONALITY OF THEIR CLAIMS.

Defendant contends that Plaintiffs cannot meet the commonality requirement of Rule 23.  Defendant hangs its hat on the notion that the facts underlying Plaintiffs' claims and that of the class must be identical.  This is not so.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Stands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001).  As this Court recently noted in *Avilez:* "One way that a plaintiff can establish predominance is by showing that the 'the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of class members.'"  *Avilez*, No. SACV 11-0493 DOC (RZx), at p. 25 (*citing Ortega v. J.B. Hunt Transp., Inc.* 258 F.R.D. 361, 367 (C.D. Cal. 2009); *Local Joint Executive Bd. Of Culinary/Bartender Trust Fund*, 244 F.3d at 1162).

The evidence obtained to date, from depositions of defendant witnesses, documents produced in discovery, and even the declaration of Defendant's Executive

PLAINTIFFS' OPPOSITION TO MOTION TO
DENY CLASS CERTIFICATION

Vice President filed concurrently with Defendant's Motion (*see* Doc. 31-3), clearly show that the focus is on Defendant's own formal policies and procedures.  Such company wide policies and procedures present common issues of law and fact, including:

1.  Whether requiring on-duty meal and rest breaks constitutes a violation of Labor Code §226.7 and IWC Wage Order 4-2001;

2.  Whether implementation of rounding and time-keeping procedures while requiring pre-shift and post-shift work resulted in violations of Labor Code §1194 and IWC Wage Order 4-2001.

Common issues are equally presented on Plaintiffs' Labor Code §§203 and 226 claims—violations which are predicated on the same nucleus of common policies and procedures.  Evidentiary support for commonality under both Rule 23(a) and 23(b)(3) is discussed below and detailed further in Plaintiffs' concurrently filed Motion for Class Certification.  (*See* Plaintiffs' Motion for Class Certification and supporting papers, Docs 32-37.)

## A. IPC HAS A COMMON POLICY OF DENYING MEAL AND REST BREAKS TO SECURITY OFFICERS

### 1. *All Security Officers in California Were Subject To The Same On-the-Job Meal and Rest Break Policy*

As explained in detail in Plaintiff's Motion for Class Certification, Defendant has a common policy of requiring **on-duty** or **on-the-job** meal and rest breaks throughout California.  (Exh. A to Stano Decl., Doc. 33-1 [IPC pocket manual, at p. 11]; Exh. F to Kani Decl., Doc. 36-3 [Joe Zderadica ("Joe Z"), Dep. 207:12-208:22; 225:7-18; 227:6-9.])  Defendant has not produced a single piece of evidence here that is inapposite.  Rather, as the Executive Vice President for all of IPC International Corporation has now conclusively established, IPC distributes a single policy regarding meal and rest breaks in California, and utilizes that policy at all of its California locations.  Defendant confirms that "IPC's Policies and Procedures Manual, distributed to all IPC locations, delineates IPC's policies on meal and rest breaks."  (Hamilton Decl., Doc. 31-3, ¶8-9; Exh. A to Stano Decl, Doc. 33).  The policy to which Defendant refers proves Plaintiffs' point:

PLAINTIFFS' OPPOSITION TO MOTION  TO DENY  CLASS CERTIFICATION

*"Officers are to remain available to respond to calls at all times while on duty on Center Property, even during meals and breaks."*

(Exh. A to Stano Decl., Doc. 33 [IPC Pocket manual, at p.11].) (emphasis added).  By its clearly written policy, IPC required that all of its officers remain on duty at all times, even during meal and rest breaks.

Moreover, the declarations of current employees submitted by Defendant further supports this common policy.  Indeed, even though Defendant secured thirty-three (33) declarations in support of its motion, not a single one states that an officer was not on call and/or on duty during meal and rest breaks, that an officer was free to leave the premises and/or *has ever* left the property during a meal or rest break.  Rather, the officers *uniformly confirm* that they stayed on the premises during all breaks.[2]  Defendant's declarations further support the on-duty nature of breaks, because many officers confirm that they were interrupted during both meal and/or rest breaks.[3]  Thus, by Defendant's own admission, IPC has a common policy of on-the-job meal and rest breaks throughout California.

To distract from this central and undisputed fact, Defendant highlights that *the manner and means* by which officers take their breaks varies across IPC locations.  This variance, Defendant argues, renders class certification inappropriate.  Defendant's argument is unpersuasive and its reliance on *Gonzalez v. Millard Mall Services, Inc.*, 281 F.R.D. 455 (S.D. Cal. March 2, 2012) is misplaced.  In *Gonzalez*, plaintiffs sought certification on the grounds that the employer prevented employees from taking meal and rest breaks. *Id.* at 461.  The *Gonzalez* case was not based on a formal, company-wide policy that required all meal and rest breaks to be taken on-duty and on-premises, but one that required all hourly employees clock in and out for meal periods taken (*Id.* at 458)

---

[2]*See* e.g., Ablitz Decl., Doc. 31 ¶7; Downs Decl., Doc. 31 ¶8; Coyt Decl., Doc. 31, ¶8; Dean Decl., Doc. 31, ¶8; Duke Decl., Doc. 31 ¶11; Gamble Decl., Doc. 31, ¶9; Gordon Decl., Doc. 31, ¶7; Massaga Decl., Doc. 31, ¶9; Poese Decl., Doc. 31, ¶8; Tran Decl., Doc. 31 ¶9; Williams Decl., Doc. 31, ¶7 .

[3] See, e.g., Masaga ¶ 22; Espinoza ¶ 55; Hernandez ¶ 10; Tobin ¶10; Wange ¶ 11.

1    and that 30-minute off-duty meal breaks be taken (*Id.* at 462).  The *Gonzalez* Court noted

2    that the employer "had a meal and rest period policy conforming to the applicable laws

3    and wage order."  *Id.* at 463.

4         Unlike *Gonzalez*, Defendant does not have a policy that complies with California

5    law.  Any difference in the procedure for taking meal and rest breaks does not alter the

6    on-duty nature of the meal and/or rest breaks.  It is precisely the ***on-duty nature*** of these

7    breaks that violates clear California law, which requires that employees be relieved of all

8    duty during meal and rest breaks.[4]  [Hamilton Decl., Doc. 31-3, ¶14.]  "The ***IWC's wage***

9    ***orders have long made a meal period's duty-free nature its defining characteristic***."

10   *See*, *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1035 (2012) (emphasis

11   added).  As the *Brinker* decision has clarified, "[t]he wage order's meal period

12   requirement is satisfied only if the employee ***(1) has at least 30 minutes uninterrupted,***

13   ***(2) is free to leave the premises, and (3) is relieved of all duty for the entire period***."

14   [Citations omitted.]  *Brinker*, 53 Cal. 4th at 1036 (citing DLSE Opinion Letter, 1988-01-

15   05, at p. 1) (emphasis added).  Under the circumstances, Plaintiffs evidence establishes a

16   common policy that ***does not relieve its officers of all duty*** during meal breaks.[5]

17        In a case very similar to this one, *Avilez.*, SACV 11-0493 DOC (RZx) (C.D. Cal.,

18   Oct. 9, 2012), this Court considered whether an employer's policy of requiring on-duty

19   meal breaks by security officers is subject to class certification.  This Court concluded

20   that it is. *Id.*  As the Court held therein, "Courts in this circuit routinely hold that the

21   commonality requirement of Rule 23(a) is satisfied where, as here, the Defendant has a

22   policy and practice that allegedly fails to provide putative class members off-duty meal

23

24

25   [4] Nor is Defendant persuasive in providing evidence that security officers were permitted to take meal
26   and rest breaks and/or were not directed not to take breaks, because Plaintiff's argument is premised on
     the nature of the breaks, and not on whether they were able to take them.

27   [5] In addition, IPC does not pay its officers a premium for missing meal breaks. (Exh. I to Kani Decl.,
28   Doc. 36-6 [payroll records].) *See* Cal. Lab. Code § 226.7; IWC Wage Order No. 4 § 11(b); *Murphy v.*
     *Kenneth Cole Productions, Inc*., 40 Cal. 4th 1094, 114 (2007), (the premium is a wage, and not a
     penalty.)

breaks and thus allegedly violates Wage Order 4-2001 § 11." *Id.* at 19.[6]  In *Avilez*, this Court similarly held the requirements of Rule 23(b)(3) are met in such circumstances. *Id.* at 38.

Similar to *Avilez*, this case presents identifiable, company-wide policies of Defendant that require employees to take on-duty meal breaks. *Avilez,* SACV 11-0493 DOC (RZx), at p. 38. The policy presents a common issue of fact and law as to Security Officers throughout California.  And like *Avilez,* this case is equally certifiable. *Id.* at 38, 42.

### 2. Defendant's On-Duty Rest Break Policy Is Not Defensible.

Defendant tries to paint Plaintiffs' rest break claim with the same brush by claiming that it is subject to individualized proof. Yet, the very same on-duty policies identified above create the same common questions of law and fact as to rest break violations. California law requires that every employer "authorize and permit" all employees to take a net 10 minutes of rest provided in each "work period" and the rest period must be  "***duty-free***." DLSE Opinion Letter, 2002-02-22.  There is simply no such thing as an "on-duty" rest break.  They are unlawful.  As the *Brinker* decision recently explained (*Brinker*, 53 Cal. 4th at 1033), a uniform policy like IPC's serves as a basis for certification on rest break violations because the California security officers were never relieved of duty during their rest breaks. (Exh. F to Kani Decl., Doc. 36-3 [Joe Z . Dep. 207:12-208:22; 225:7-18; 227:6-9]; Exh. A to Stano Decl., Doc. 33-1].)

---

[6] *Id.* at 19 (citing, *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633, 636 (S.D. Cal. 2010) (granting class certification and finding commonality because defendants-employers' "policies were common across [d]efendant's California facilities" and case was subject to common proof, namely whether the "policies deprived the putative class members of meal periods," and "common legal questions, such as [d]efendants' obligations under California Labor Code §§ . . . 226, 226.7," as specified in "Wage Order 4-2001"); *Schulz v. Qualxserv, LLC,* NO. 09-CV-17- AJB (MDD), 2012 U.S. Dist. LEXIS 58561 at *10-12 (S.D. Cal. Apr. 26, 2012) (granting class certification and finding commonality because the issue of whether "Defendants' policies and practices comply with [Wage Order 4-2001] is the type of question that can be answered on a classwide basis" and listing several cases reaching the same result); *Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 U.S. Dist. LEXIS 101127, *17-19 (N.D. Cal. Sept. 8, 2011) (granting class certification and finding commonality because "Plaintiffs contend, and the evidence indicates, the challenged policy applies to all the members of the class throughout the facility with only exceptional variations").

PLAINTIFFS' OPPOSITION TO MOTION  TO DENY  CLASS CERTIFICATION

1   Defendant's policies and, even their own declarations, support that their officers

2   were on-site and on-duty during rest breaks, and were even interrupted during such

3   breaks. [7]   Accordingly, Plaintiffs have established a common policy requiring on-duty

4   rest breaks throughout California, in violation of Labor Code §226.7 and IWC Wage

5   Order 4-2001.

6   ### 3.  *Defendant's Evidence As To Fashion Island Is a Red-Herring.*

7   Defendant's argument against certification of the Fashion Island class is even less

8   persuasive and yet another attempt to divert attention from its company-wide policies.

9   As an initial matter, IPC Fashion Island was subject to and followed the identical on-duty

10  meal and rest break policies applicable to all of IPC's California locations, as set forth in

11  its Policy & Procedure Manual.  (Hamilton Decl., Doc. 31-3, ¶8-9; Exh. A to Stano Decl.,

12  Doc 33-1).  Thus, for the same reasons articulated above, the Fashion Island class is

13  subject to certification based upon Defendant's unlawful on duty meal and rest break

14  policy.[8]

15  Representative testimony of the Fashion Island Security Officers, submitted in

16  support of Plaintiff's Motion for Class Certification, also demonstrates that Fashion

17  Island officers were denied meal and rest breaks for the independent reason that travel

18  time to and from the break room was not factored into their break schedules.[9]  None of

19  Defendant's Fashion Island declarations contradict Plaintiffs' claim that they were

20  shorted time on meal and rest breaks, and in fact support it.  In fact, the declarations

21  confirm that:

22      • Security officers take their breaks in the break room ("500 Building).

23        (Almanza Decl., Doc. 31, ¶8; Ablitz Decl., Doc. 31, ¶6; Hallman Decl.,

24        Doc. 31, ¶10; Penalosa Decl., Doc. 31, ¶5; Downs Decl., Doc. 31, ¶7.)

25

26  _____

27  [7] See footnote 3 above.

28  [8] See Stano Decl., Doc. 33; Shu Decl., Doc. 32-1; Guerrero Decl., Doc. 32-2, ¶¶9-19; Carmona Decl.,
    Doc. 32, ¶¶19-30; Booth Decl., Doc. 32-3, ¶¶9-14.
    [9] *Id.*

PLAINTIFFS' OPPOSITION TO MOTION  TO
DENY  CLASS CERTIFICATION

- Security officers must receive clearance from supervisors in order to take breaks. (*See e.g.*, Hallman Decl., Doc, 31-3 ¶11-15; Penalosa Decl., Doc. 31, ¶6; Ablitz Decl., Doc. 31, ¶7].)
- Plaintiffs were not afforded additional time to take meal and rest breaks to account for their travel time to and from break areas. (Pack Decl. ¶9, Doc. 31-4.)

Defendants, of course, will not articulate the inevitable result of these policies, i.e., the officers are shorted the time from when they receive clearance, and the time they actually arrived in the break room.   As Plaintiffs' evidence indicates (and to which Defendant's declarations are silent), it takes officers up to fifteen (15) minutes to travel to and/or from the break shift when leaving and/or arriving at their shifts before and/or after breaks, which is not accounted in the supervisors' schedules.[10]   In addition to simply walking, the security officers had to respond to mall customer inquiries. (Exh. F to Kani Decl., Doc. 36 [Joe Z Dep.: 217:24-218:12].)[11]   As a result, the Fashion Island Security Officers never had thirty (30) minutes for meal breaks or ten (10) minutes for rest breaks, in violation of Labor Code §226.7 and IWC Wage Order 4-2001. *See, also, Brinker*, 53 Cal. 4th at 1036.

## B. IPC HAS A COMMON POLICY OF DENYING PAY FOR ALL HOURS WORKED.

The United States Supreme Court has recognized that preparatory and after-shift activities that are an integral part of the employee's principal activity are compensable as time worked. *See Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956) (in meat packing plant, time spent sharpening knives before and after work considered integral and compensable). When, as here, an employer requires its employees be at designated places, the employees are "subject to the control of an employer" and their time is compensable. *Morillion*, 22 Cal.4th at 587; *see, Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 571 (C.D. Cal. July 30, 2008) (applying the *Morillion* standard in certifying a class

---

[10] Stano Decl., Doc. 33, ¶25; Carmona Decl., Doc. 32, ¶34; Shu Decl., Doc. 32-1, ¶25; Guerrero Decl., Doc. 32-2, ¶25.

[11] Exh. F to Nina Kani [Joe Z Dep. 207:12-208:22; 217:24-218:12; 225:7-18; 227:6-9].

of employees at shipping facility who spent time in a security *lines* when entering and leaving the shipping facility); *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1062 (9th Cir. 2010).

In this case, pre-shift and post-shift work consisted of putting on and/or away gear, checking gear for functionality, checking in/out the gear, connecting/disconnecting items such as radios with microphones or ear pieces, walking to and from the supervisor's office, and standing in line to clock in/out.[12]  Under both the IWC Wage Orders and the *Morillion* Court standard, Plaintiffs and the putative class were performing compensable work, but without pay.

Indeed, the California Supreme Court in *Brinker* recently noted that "substantial evidence of a systematic company policy to pressure or require employees to work off the clock…" may serve as basis for certification. *Brinker,* 53 Cal. 4th at 1051 (noting that proof of such systematic policies and procedures were not presented in the case before the court); *see Jimenez v. Allstate Ins. Co.*, LA CV 10-08486 JAK, 2012 WL 1366052 *9-10 (C.D. Cal. Apr. 18, 2012) (*citing Brinker* in finding that, despite defendant's asserted policy to pay overtime wages, plaintiffs had submitted sufficient evidence to show a common practice of not following company overtime policies).

Such a common policy exists here.  In fact, the Executive Vice President of IPC himself admits that IPC has a common policy and practice of rounding employee time records for the purpose of making payroll.  (Hamilton Decl., Doc. 31-3, ¶18.)  This much is not in dispute.  In addition, evidence presented both by Defendant and by Plaintiffs, in their Motion for Class Certification, shows that the common rounding policy uniformly works in IPC's favor because it prevents and/or prohibits officers from "evening out" any time they lose through the rounding policy.  In fact, the IPC Attendance Policy, admitted to by IPC's Vice President, as well as a "seven minute rule," as explained by a Regional Director, works exclusively in the employer's favor, resulting in up to fourteen (14)

---

[12] See, Guerrero Decl., Doc. 32-2, ¶28; Shu Decl., Doc. 32-1, ¶¶24-25; Stano Decl., Doc. 33, ¶¶24-27; Carmona Decl., Doc. 32, ¶¶38-41; Booth Decl., 32-3, ¶¶21-26; Mathis Decl., Doc. 32-2, ¶18.

minutes of rounded time against the employees every day. (Hamilton Decl., Doc. 31-3, ¶18 ("the time system rounds the entered times to the nearest fifteen (15) minutes.").)

Defendant's uniform rounding policy has not been shown to be facially neural. Rather, Defendant's Attendance Policy, which Defendant distributes to all officers, explicitly prohibits late arrivals where an officer is not "prepared to begin active duty no later than the scheduled time at which their shift beings, " i.e., at 8:06 a.m. above. (Doc. 31-3 [Hamilton Decl., Doc. 31-3, ¶ 10; Exh. B to Hamilton, Doc. 31-3].) To the contrary, the IPC Attendance Policy states that security officers should come in *early* in order to be ready at the start of their shifts. (Id.) The Attendance Policy states:

> "IPC International expects their employees to ***be prepared to begin active duty***, in uniform, no later than the scheduled time at which their shift beings. In this interest, ***it is beneficial to arrive a few minutes early*** to handle any personal details and ***prepare for active patrol***." (emphasis added).

(Id.)

Plaintiffs confirm that they and other Security Officers came to work early, up to 30 minutes, in order to comply with IPC policy. (Guerrero Decl., Doc. 32-2, ¶¶24-25; Shu Dec., Doc. 32-1, ¶¶21-23; Carmona Decl., Doc. 32-2, ¶¶ 31-37; Stano Decl., Doc. 33, ¶¶ 20-23; Mathis Decl., Doc. 32-4, ¶¶ 16-18; Booth Decl., Doc. 32-3 ¶¶15-20].) Indeed, officers had to come in early in order to get ready on time or face discipline and/or termination for tardiness. (Hamilton Decl., Doc. 31-3, ¶10; Exh. B to Hamilton Decl., Doc. 31-3) ("Repeated or unexcused tardiness or absences will not be condoned or tolerated.").) The officers were never compensated for their preparatory work because that time was "off the clock" through the company rounding policy. The time simply disappeared from the time sheets as if it never happened.[13] IPC's rounding process was a common policy applicable to all security officers throughout the state. (Id. at ¶18.) It is

---

[13] Defendant's declarations in support of their motion are not persuasive. The security officers affirm they were paid for all hours worked, but that is simply not known them. (See Plaintiffs' Objections to Evidence 5-13.) Rather, what we now know is that Defendant utilized an unlawful rounding system which automatically rounded the time the officers took prior to and after their shifts.

also not a facially neutral because it punishes "tardiness," (where an officer would benefit from the rounding system), but *requires* that officers come in early to prepare for active patrol on time.  Accordingly, both Plaintiffs and Defendant evidence demonstrate that Defendant has a common policy of rounding employee time that works uniformly against the security officers.

A Regional Director for Southern California made clear that Security Officers in California are subject to a "seven minute rule," which prohibits them from clocking in more than seven minutes prior to their scheduled shift, or clocking out more than seven minutes after their shift is scheduled to end.  This is explained by the Regional Director:

> Q:   What is IPC's policy with regard to, at what point a
>       security officer is required to clock in at the beginning of
>       their shift?
> A:   We have a seven-minute procedure, that an officer should
>       not punch in before seven minutes to their time of
>       starting.
> Q:   They should not punch in more than seven minutes prior
>       to the beginning of their shift?
> A:   Correct.

(Exh. F to Kani Decl., Doc. 36 [Joe Z Dep.:194:13-21].)

The seven minute rule prevents officers from "evening out" the rounding policy because it prohibits clocking in more than seven minute early, i.e., an officer is prohibited from clocking in more than seven minutes early, which would result in a rounded time of 6:45, if, for example the employee clocked in at 6:52, rather than a rounded time of 7 a.m.  Likewise, it prohibits officers from clocking out seven minutes beyond her shift. The end result of Defendant's policies is that the officers' time records regularly reflect only eight hours of work, or as stated by an Assistant Director, "*It keeps them within their eight hours.*"  (Exh. G. to Kani Decl., Doc. 36 [Pack Dep. 127:1-27].)  Defendant's evidence does not contradict any of these policies and consequences of Defendant's rounding and attendance policy.

1    Irrespective of how long it took the Security Officer to perform these required

2    tasks, they were never paid for their time due to IPC's rounding policy.  (Exh. I to Kani

3    Decl., Doc. 36-6.)  In any event, whether the rounding policy is facially neutral is not an

4    issue here.  Rather, the Court need only determine whether there is a common policy of

5    rounding[14], subject to common proof and/or defense, and that is not in dispute.

6    (Hamilton Decl., Doc. 31-3, ¶18.)

7    **C. COMMON ISSUES PREDOMINATE AS TO TIMELY PAYMENT OF WAGES AND**

8    **FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS.**

9    Defendant cites an inapposite case, *Gonzalez*, 281 F.R.D. 455, for the proposition

10   that "willfulness" must be shown on class certification.  *Gonzales*, however, did not

11   involve a formal and, as such, willful policies. *Id.* at 465.  Here, before the Court are

12   formal policies that preclude off-duty meal and rest breaks and payment for all hours

13   worked. The formal policies lay the grounds for willfulness.  The common question

14   presented is: do these policies, by virtue of the fact that they are developed and

15   implemented throughout all locations, rise to willful violations of Labor Code §203?

16   Similarly, the policies present common issues on violations of Labor Code §226 for

17   failure to provide itemized wage statements[15].

19   **V.    DEFENDANT'S DEFENSES CANNOT DEFEAT CERTIFICATION.**

---

[14] Defendant does not cite to any California law to show that rounding is permissible.  Nonetheless, the issue of whether a rounding policy is legal is one of merits.  The district has found that cases involving common policies and practices on round are in fact subject to class certification. *See Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 521-522 (C.D. Cal. Jun. 17, 2011) ("The lawfulness of Defendant's policy is irrelevant at the class certification stage…individual differences do not refute the fact that Plaintiffs have shown that there are indeed common questions of law and fact as to Defendant's rounding policy.")

[15] The premium pay under Labor Code §226.7, an additional one hour pay for each meal period not provided, has been held to constitute "a form of wages." *Murphy.,* 40 Cal.4th 1094 at, 1114 *).*  Similarly, failure to provide meal breaks and to record the premium pay accrued results in a violation of Labor Code §226(a). Avilez, No. SACV-11-00493-DOC (RZx), at 21 (citing *Ricaldai v. US Investigations Services, LLC*, __F.Supp.2d.__, No. CV 1-07388 DDP (PLAx), 2012 WL 2930474, *8 n.4 (C.D. Cal. May 25, 2012).

Defendant mistakenly attempts to shift the burden to Plaintiffs to prove, on a motion for class certification, that the *de minimis* affirmative defense does not apply. To the extent California looks to federal law on the limited *de minimis* rule, the affirmative defense does not preclude certification.

The Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, explained the *de minimis* rule as follows: "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Anderson v. Mt. Clemens Pottery Co*, 328 U.S. 680, 692 (1946).  When applying the *de minimis* rule to otherwise compensable time, the following considerations are appropriate: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow*, 738 F.2d 1057, 1063 (9th Cir. 1984).  Courts have found varying degrees of off-the-clock to be outside the scope of *de minimis*, but there is not rigid rule.  As the Ninth Circuit held:

> [W]e have not adopted a ten or fifteen minute *de minimis* rule. Although we noted in *Lindow*, that 'most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable,' we went on to hold that "[t]here is no perceive amount of time that may be denied compensation as *de minimis*' and that [n]o rigid rule can be applied with mathematical certainty."

*Rutti*, 596 F.3d at 1058 (citing *Lindow,* 738 F.3d at 1062); *see Reich v. Monfort*, 144 F.3d 1329, 1333-1334 (10th Cir. 1998) (an average of 8 – 11.5 minutes per *day* per employee did not fall under the *de minimis* exception).  The Ninth Circuit found that representative testimony on the amount of hours work was sufficient to show that a triable issue of fact existed as to whether the *de minimis* rule applied. *Rutti*, 596 F.3d at 1334.

Similar to *Rutti*, Plaintiffs here have presented representative testimony as to approximately 20 – 45 minutes they spent on pre-shift and post-shit activities. (*See supra.,* ¶IV(B).)  Moreover, Plaintiffs have shown that Defendant has a common policy requiring pre-shift work without compensation, as well as common policies that rounding pre-shift and post-shift work in favor the employer. (*Id.*)  However, unlike *Rutti*, a motion

PLAINTIFFS' OPPOSITION TO MOTION TO
DENY CLASS CERTIFICATION

for summary judgment is not before the Court.  The only issue before the Court at this time is one of certification, and courts have consistently found that the *de minimis* defense does not preclude class certification.  See e.g., *Jimenez,* 2012 WL 1366052 *20 (application of *de minimis* rule does not preclude class certification.)  "With respect to Defendant's *de minimis* defense, it can be addressed through representative testimony…" *Id.* (*citing Mahoney v. Farmers Ins. Exch.,* No. 4:09-cv-2327, 2011 WL 4458513 (S.D. Tex. Sept. 23, 2011); *Adoma v. University of Phoenix, Inc.*, 270 F.R.D. 543, 550 (E.D. Cal. 2010) (""The need to determine whether overtime was *de minimis* does not itself preclude class or collective certification.").  "Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp.2d 1114, 1121 (E.D. Cal. 2009); *see also, Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 521-522 (C.D. Cal. 2011) (certifying class for the off-the-clock work resulting from Defendant's rounding policy).

Thus, Defendant's common policies requiring pre-shit and post-shift work without compensation cannot be defeated based on *de minimis* arguments on class-certification.

## VI.   THE CLASS IS ASCERTAINABLE.

Without any discussion regarding Plaintiffs' class definition, Defendant summarily contends that it is "fail-safe" and, as such, not certifiable.  "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 Fed.App. 734, 726 (9th Cir. 2010).  This circular difficulty does not exist in the case-at-hand.

First, because Defendant filed their Motion to Deny Class Certification concurrent to Plaintiff's Motion for Class Certification, they fail to address the *actual* class definition on which Plaintiffs seek certification in their Motion. (*See* Plaintiffs' Notice of Mot. for Class Cert., Doc. 32, at pp.2-3; *see also,* Plaintiffs' Memorandum ISO Mot. for Class Cert., Doc. 32-1, at p. 11.)  Plaintiffs seek certification of the following California class:
**IPC California Subclass:**

> All current or former employees of Defendant IPC who worked
> as Security Officers at IPC locations throughout California for
> the last four (4) prior to the filing of this action.

Alternatively, Plaintiffs seek certification of the a Fashion Island class:

> **Fashion Island Class:**
> All current or former employees of Defendant IPC who worked
> as a Security Officers at IPC's Fashion Island location for the
> last four (4) years prior to the filing of this action.

The class definition on which Plaintiffs seek certification is not fail-safe—it is in no way tied to a finding of liability.

Second, even if one where to only look to the explicit language of the Complaint or First Amended Complaint ("**FAC**"), it is not based on a finding of liability. The class, as defined in the pleadings, identifies Security Officers who "did not receive pay for all hour[s] worked, did not receive overtime compensation, and were subjected to the Labor Code violations alleged herein…" (See FAC, Doc. 27-1, ¶33)  Yet, the Ninth Circuit and district courts have found that incorporation of overtime or premium pay requirements into the class definition does not necessarily create a fail-safe definition.

In *Kamar*, the Ninth Circuit found that a class definition amended by the Court to include employees who worked without premium pay or worked split-shift schedules without premium pay did not constitute a fail-safe class definition.  Rather the Court found that:

> [T]he designation made by the district court should be seen as a
> way of narrowing the class to employees within the reporting
> time and split-shift classification, without actually
> distinguishing between those who may and those may not
> ultimately turn out to be entitled to premium pay. So construed,
> the class action remains manageable because the definition is
> not a circular one that determines the scope of the class only
> once it is decided that a class member was actually wronged.

*Kamar*, 375 Fed.App. at 726.  Similarly, the district court in *Heffelfinger v. Electronic Data Systems Corp.*, CV 07-00101 MMM Ex, 2008 WL 8128621 (C.D. Cal. Jan. 7, 2008), *affirmed and remanded,* 08-56319, 2012 WL 2045960 (9th Cir. June 7, 2012) found that a class definition that incorporated overtime violations (work in excess of 8

hours per day and 40 hours per week without overtime compensation) did not constitute an impermissible fail-safe class definition. *Id.* at \*10-11.  The court noted:

> It is not apparent from the complaint or subsequent pleadings that plaintiffs truly intend to seek certification of a class of information technology workers who are entitled to overtime as a matter of law.  The gravamen of plaintiffs' claim is that *all* information technology workers employed by EDS are entitled to overtime.

*Id.* at \*11.

In the end, however, Defendant's fail-safe argument is not a basis for denying class certification.  Even if a proposed class definition is found to be improperly "fail-safe," the court has the discretion to amend the class definition or give Plaintiffs an opportunity to do so in order to cure the defect. *Heffelfinger*, 2008 WL 8128621)[16].

Here, Plaintiffs moved for certification on a class definition that excluded the overtime or Labor Code violations language.  Even so, the Court itself may simply strike out the language so that it may then reach the chief issues here: Defendant's common policies and procedures.  Indeed, modification of class definitions to resolve any issues of ascertainability or even conflict, as discussed further below, is within the Court's inherent authority. (*See infra.,* ¶VII(B).)  The solution is simple and conventional.

## VII.   THE CLASS HAS AND WILL CONTINUE TO BE REPRESENTED ADEQUATELY AND WITHOUT CONFLICTS.

Defendant's attacks on Plaintiffs and their counsel are unwarranted.  Rule 23(a)(4) of course requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4).  The underlying purpose of the

---

[16] *See also, Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 WL 420191 \*3 (N.D. Cal. Feb. 5, 2007) (striking words "who have experienced gender discrimination at any time during the class period" from class allegations in order to avoid fail-safe language); *see Carlson v. General Motors Corp.,* Civ. A. No. 2-86-2674-a, 1991 WL 90893 WL 90893, \*2 (D.S.C. Mar. 14, 1991) ("the court is not prepared at this time to say that plaintiffs' class definition fails the 'ascertainable with reasonable certainty' test.  The discovery under way, and the additional discovery to follow, may provide additional building blocks in plaintiffs' construction of this class action suit").

PLAINTIFFS' OPPOSITION TO MOTION TO DENY CLASS CERTIFICATION

adequacy requirement is to ensure that absent class members are afforded adequate representation before being bound by a judgment. *Hanlon*, 150 F.3d at 1020. Plaintiffs and their counsel, as demonstrated by declarations filed in support of Plaintiffs' Motion for Class Certification, have and will continue to vigorously represent the putative class' interests.

### A. DESPITE DEFENDANT'S OBSTRUCTIONIST TACTICS, PLAINTIFFS' COUNSEL HAS VIGOROUSLY REPRESENTED PLAINTIFFS AND THE PUTATIVE CLASS.

Defendant's contention that Plaintiffs' counsel has not conducted depositions or discovery directed at the California Class is baseless and disingenuous. Although Defendant focuses on 30(b)(6) depositions, it fails to inform the Court that 8 depositions have been conducted to date. (Kani Decl., ¶9(g).) Defendant also omits from its brief the fact that Plaintiffs' counsel noticed the depositions of Defendant's Regional Director of Southern California (Joe Z, who oversees the implementation of IPC policies and procedures in at least 34 properties in California), Security Director of Fashion Island (Sheri Machado), Assistant Security Director of Fashion Island (Debra Pack), and Security Supervisor (Pablo Salcido). (Id.) The depositions, however, were not conducted until September and October 2012 simply because (1) Defendant insisted that the depositions of Plaintiffs, noticed shortly before, take place first, (2) counsel for Defendant was repeatedly unavailable for a deposition due to his trial schedule, and (3) Defendant refused to produce its witnesses in the order noticed. (Id.) Nonetheless, Plaintiffs' counsel proceeded with the depositions of these witnesses—***the same witnesses identified by Defendant in its Rule 26 Disclosures***. Plaintiffs have also noticed a 30(b)(6) deposition, having served a notice on September 27, 2012, but once again Defendant has yet to agree to a date for the deposition. (Kani Decl., ¶9(k).)

Moreover, Defendant's contention that Plaintiffs' counsel has not sought discovery of the California Class is surprising to say the least. Defendant has at every turn refused to produce documents pertaining to the class or class information. (Kani Decl., ¶9(c).) When Plaintiffs raised the issue with the Court during the Rule 26 Conference, the Court requested that the parties present their discovery dispute to a discovery master. (Id.) Yet,

PLAINTIFFS' OPPOSITION TO MOTION TO DENY CLASS CERTIFICATION

it took weeks and several correspondences back and forth to obtain an agreement from Defendant on the scope and procedures for review by the discovery master. (Kani Decl., ¶9(b-e).)

Despite Defendant's obstructionist tactics, the fact of the matter is that Plaintiffs have ***sought and obtained evidence aimed at policies and procedures implemented throughout California***.  The Regional Director, Joe Z, has testified as to, among other things, the implementation of formal policies throughout all locations in California, the similar customer service job duties of Security Officers, and authenticated the company's general written policies.  (Exhs. G-H to Kani Decl, Doc. 36-4 – 34-5).  The Assistant Director and Security Supervisor at Fashion Island have done the same.  (Id.).  Additional evidentiary support has been submitted in conjunction with Plaintiffs' Motion for Class Certification, Docs. 33-35).  Importantly, the Executive Vice President, the same person who Defendant intend on producing as a 30(b)(6) witness (once a date is actually agreed upon), has confirmed the California wide implementation of the same common policies and procedures at issue in Plaintiffs' Motion for Class Certification. (Kani Decl., ¶9(l); Hamilton Decl., Doc. 31-3, ¶4,8.)

Defendant has absolutely no basis for its contention that Plaintiffs' counsel has not vigorously prosecuted this action.  As stated in declarations filed in support of Plaintiffs Motion for Class Certification, counsel for Plaintiffs is experienced and has and will continue to adequately represent the interests of the class. (Kani Decl., Doc. 36, ¶¶13-36; Ziaee Decl., Doc. 35, ¶¶4-8.)

**B. DEFENDANT'S FAIL TO PRESENT ANY EVIDENCE OF A CONFLICT**

Defendant claims that counsel for Plaintiffs and one of the four representative Plaintiffs, Ms. Leslie Stano, have a conflict Pablo Salcido, who they claim is a member of the putative class.  Actual evidence of a conflict, however, is necessary in order to show that counsel or a plaintiff is conflicted out.

In *Spears ex. Re. v. First American eAppraiseIT*, No. C-08-00868 RMW, 2010 WL 2674031 (N.D. Cal. 2010), the district court was faced with a similar situation as here, where defendant contended that a class representative could not adequately represent the

class because she was represented by the same counsel in a separate lawsuit.  The court did not give merit to defendant's adequacy argument.  Instead, it found that defendant had "failed to show how this separate representation in a separate case creates a conflict of interest between [the named plaintiff] and other class members." *Id.* at *3.  The court found that it had "no reason to believe" that a conflict of interest existed or that the named plaintiff "would not prosecute the action vigorously on behalf of the class." *Id.*

Similarly here, Defendant has not presented any evidence that an actual conflict exists, nor could it.  The only evidence submitted in support of Defendant's contention is the Complaint filed in Orange County Superior Court on behalf of Ms. Stano against her supervisor, Mr. Salcido, for sexual harassment and sexual assault. (Defendant's Request for Judicial Notice, Doc. 31-1 [Exh.1].)  No further evidence is submitted by Defendant to show that Mr. Salcido is a putative class member or that filing of the separate action somehow presents a conflict of interest.  In fact, a cursory review of the Complaint pending in Orange County Superior Court demonstrates that the lawsuit was filed by Ms. Stano for sexual harassment (under rather egregious circumstances) by her _supervisor,_ Mr. Salcido.  The individual action is based on entirely different transactions and occurrences, and does not demonstrate how Mr. Salcido would is in the putative class.

**C. THE COURT MAY CLARIFY THE CLASS DEFINITION.**

Defendant fails to inform the Court that Mr. Salcido, a defendant witness deposed in this case, is a Supervisor , and not a Security Officer.  (Exh. H to Kani Decl., Doc. 36-5 [Salcido Dep. 123:23-124:25; 127:19-25; 209:16-210:10].) Mr. Salcido's job duties include implementation of IPC's unlawful policies, including scheduling and clearing officers for meal and rest breaks, demanding that officers clock out before completing their work, and interrupting officers during breaks. (Id.; Stano Decl., Doc. 33, ¶¶7, 10, 25.)  Plaintiffs, however, have sought certification of a California, or alternatively a Fashion Island, class of all Security Officers employed by IPC. (Notice of Motion for Class Cert., Doc. 32.)  ***The class definition does not include employees who have been employed as supervisors, directors or in a management position during the class period***.  (Id.)  Supervisors and other higher-level employees are directly involved in the

1   development and/or implementation of the very same policies of which Plaintiffs

2   complain, and as such they were not and are not intended to be included in the class

3   definition.

4         Nonetheless, to the extent there may be any ambiguity, district courts have the

5   inherent power to modify a proposed class definition in order to move forward with a

6   class action.  "Where appropriate, the district court may redefine the class…" *Armstrong*

7   *v. David*, 275 F.3d 849, 872 (9th Cir. 1987), *abrogated on other ground by Johnson v.*

8   *California*, 543 U.S. 499, 504-505 (2005) (*citing Penk v, Oregon State Bd. Of Higher*

9   *Educ.*, 816 F.2d 458, 467 (9th Cir. 1987)[17].  Indeed, in *Kirola v. City of San Francisco,*

10  No. C-07-03685, 2011 WL1330853 (N.D. Cal. April 4, 2011), the Court was faced with a

11  class definition that included an employee charged with developing and implementing the

12  same policies challenged by Plaintiffs.  Although the district court noted that an actual

13  conflict is present, such conflict "can be remedied by excluding [the particular employee]

14  from the class definition." *Id.* at *5.  The court redefined the class to exclude particular

15  employees involved in the development and implementation of the policies at-issue. *Id.* at

16  *6.

17

18  _____

19  [17] *See also, Mazur v. eBay, Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) (*citing Hagen v. City of Winnemucca*,
108 F.R.D. 61, 64 (D.Nev. 1985)).  Courts have repeatedly modified a class definition in ruling on

20  certification so that the definition is more specific and certifiable. *See Xuifang Situ v. Leavitt*, 240 F.R.D.
551, 558-559 (N.D. Cal. Jan. 12, 2007) (modifying class definition to avoid reaching merits of case

21  when determining membership in class); *Cervantez v. Celestica Corp.,* No. EDCV-07-727-VAP
(OPx)2010 WL 2712267 *1 n.1 (C.D. Cal. July 6, 2010) (approving parties' request to modify class

22  definition of meal and rest break class on a motion for preliminary approval of class action settlement);
*Doe v. Unocal Corp.,* 67 F.Supp.2d 1140, 1143 (C.D. Cal. 1999)  (modifying class definition to resolve

23  any ambiguities in class definition and cure defects); *Abdullah v. U.S. Security Associates, Inc.*, Case
No. CV 09-9554, at p. 2 n.2 (C.D. Cal. January 11, 2011) (modifying class definition on motion for class

24  certification to avoid over broad definition); *Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536, 551
(D. Idaho 2010) (modifying class definition on class certification motion to avoid "fail-safe" class

25  definition); *Brazil v. Dell, Inc.*, 585 F.Supp.2d 1158 (N.D. Cal. 2008) (allowing plaintiffs opportunity to
amend to avoid "fail-safe" class definition); *Kamar*, 375 Fed.App. at 726 (approving district court

26  narrowing of class definition); *Thomasson v. CG Services Limited Partnership,* 275 F.R.D. 309 (S.D.
Cal. 2011) (finding that arguments that class definition was unascertainable and "fail-safe" did not

27  overcome certification: "Although there may be issues surrounding identification of class members, as
discussed above, they are relatively minor and do not effect the ability of to ascertain the class.")

28

PLAINTIFFS' OPPOSITION TO MOTION  TO
DENY  CLASS CERTIFICATION

1   The same can be done here.  Should the Court be inclined to find that there is an

2   ambiguity in the class definition such that Supervisors, Directors or others in

3   management may be in read into the class, that ambiguity is resolved simply by

4   modifying the class definition as follows:

> All current or former employees of Defendant IPC who worked
> as Security Officers at IPC locations throughout California for
> the last four (4) years prior to the filing of this action.
> Employees who have held the position of Supervisor, Assistant
> Director, Director or other management level positions for the
> last four (4) years prior to the filing of this action are excluded
> from the Class.

The proposed clarification of the class definition is within the Court's inherent authority.

### D. THE MERE FACT THAT AN INDIVIDUAL SUIT IS PENDING DOES NOT CREATE A CONFLICT OF INTEREST OR SHOW LACK OF ADEQUATE REPRESENTATION.

There is absolutely no basis or logic for finding of inadequacy because a separate

lawsuit is pending against IPC and a supervisor for sexual harassment.  Both these

actions are financed by counsel and are pending on a full-contingency basis. (Kani Decl.,

¶11.)  Moreover, the individual lawsuit involves wholly unrelated transactions, namely,

the sexual assault and harassment of Ms. Stano by her supervisor. (Id.)  There is no

showing of a separate financial relationship or antagonistic interests between the two

lawsuits to justify inadequacy of counsel or class representative Leslie Stano. *See e.g.,*

*Moreno v. Autozone, Inc.*, 251 F.R.D. 417 (N.D. Cal. 2008) (finding counsel adequate

even though counsel represented named plaintiff in a separate suit where no antagonism

of interests in the two suits).

Nonetheless, the representation of Ms. Stano in a sexual harassment suit against

her supervisor does not impact the merits of Ms. Stano, the other named Plaintiffs, or the

putative class' claims or the grounds for certification.  To overcome class certification

based on the broader reading of the class definition would result in in prejudice to the

putative class and the named class members.  If the Court is inclined to find that a

conflict exists, it may be remedied without denying certification by dismissing Ms. Stano

PLAINTIFFS' OPPOSITION TO MOTION  TO
DENY  CLASS CERTIFICATION

1    as a class representative and/or ordering withdrawal of counsel in the individual action.

2    *See Kayes v. Pacific Lumber Co.,* 51 F.3d 1449, 1465 (9th Cir. 1995) (ordering

3    withdrawal from one of the lawsuits is not abuse of discretion).

4

5    DATED:  October 15, 2012          By: _____

6                                     **KANI LAW GROUP**

7                                       Nina Kani (Bar No. 221652)

8                                     895 Newport Center Drive, Suite 300
                                      Newport Beach, CA 92660

9

10                                    **ZIAEE LAW**
                                        Rana S. Ziaee (Bar No. 226238)

11                                    620 Newport Center Drive, Suite 1100

12                                    Newport Beach, CA 92660

13                                    Attorneys for Plaintiffs and Putative Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28